IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL BERK, #43739-037, § | |
| PLAINTIFF, § | |
| § | |
| v. § | CIVIL CASE NO. 3:19-CV-1190-B-BK |
| § | |
| MARIA DOUGLAS, ET AL., § | |
| DEFENDANTS. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States magistrate judge for judicial screening, including findings and a recommended disposition. The Court granted Plaintiff Michael Berk's motion to proceed *in forma pauperis* but did not issue process. Doc. 8. Upon review of the relevant pleadings and applicable law, this case should be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim.

**I.   BACKGROUND**

On May 17, 2019, Berk, a federal prisoner proceeding without the assistance of counsel, filed a *Civil Rights Complaint* against four FCI Seagoville prison officials: Residential Drug Abuse Program (RDAP) Coordinator Maria Douglas, Unit Manager Easton, Drug Treatment Specialist Martin, and Warden Maureen Underwood.[1] Doc. 3 at 1, 3. In his *Complaint*, as supplemented by his answers to the magistrate judge's questionnaires, Berk asserts civil rights violations following his transfer to RDAP on April 10, 2019. Specifically, he complains that (1)

---

[1] Since the *Complaint* was filed on the civil rights form, the Court deems it to be brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

noise from his bunkmate deprived him of adequate night sleep—in violation of his Eighth Amendment right to be free from cruel and unusual punishment, and (2) Douglas and Martin retaliated against him for filing complaints about the noise and requesting reassignment to an adjacent bunk. Doc. 3 at 5. Berk seeks declaratory, injunctive, and monetary relief. Doc. 10 at 2; Doc. 17 at 8, 10, 14.

Berk claims his "bunkmate bangs on the bunk at night for the purpose of waking [Berk] up," resulting in Berk getting "effectively no substantial deep sleep virtually every night." Doc. 3 at 6, 15. On April 29, 2019, Berk began writing to staff to seek a bunk re-assignment, contending that his physical and mental wellbeing were deteriorating due to sleep deprivation. Doc. 3 at 6-9. He eventually submitted such a request to Douglas, and after no response, to Easton. Doc. 3 at 9.

On May 3, 2019, Berk spoke to Douglas and Martin, but while they had promised to "take care of [his] complaint," they instead refused his request for a bunk move in retaliation for the complaints Berk had made to staff. Doc. 17 at 17. Berk further asserts that they grilled him about his "status as a sex offender" and the problem with his bunkmate. Doc. 3 at 10. Berk also alleges that upon returning to his unit, he experienced "severe abuse" from his fellow inmates because Martin had "ma[de] a scene" earlier that day about Berk's problems and bullying from his bunkmate. Doc. 3 at 10-11; Doc. 17 at 11.

On May 6, 2019, Berk once again asked Easton to move him, and Easton reassigned him to the adjacent bunk the same day. Doc. 3 at 9-11. However, on May 9, 2019, Douglas and Martin purportedly retaliated against Berk by informally disciplining him for his "litigious nature and using words to intimidate others" and for bypassing them and going directly to Easton. Doc.

2

3 at 12 ("They told me I need to 'get with the program' and implied that things would go 'bad' for me if I continued to 'hurt' myself by behaving in this manner—bucking their system and writing with complex, 'litigious' style."). Berk contends that the following day, Douglas further retaliated against him by ordering that he move back to his original bunk without resolving the bunkmate problem. Doc. 3 at 13. The next day, Berk mailed the instant *Complaint* to the Court.

Having now reviewed all of the applicable pleadings and law, the Court concludes that Berk failed to exhaust his administrative remedies. His *Complaint*, therefore, should be dismissed.

## II.   FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Prisoners are required to exhaust administrative remedies before filing suits challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (exhaustion "is mandatory"); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (requiring exhaustion for "all inmate suits about prison life"); 42 U.S.C. § 1997e(a). However, "failure to exhaust is an affirmative defense," so "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Nevertheless, a district court "can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust." *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (citing *Jones*, 549 U.S. at 215); *Canales v. Ayala*, 778 F. App'x 325, 325-26 (5th Cir. 2019) (per curiam) (dismissing *sua sponte* case filed before exhausting administrative remedies).[2]

---

[2] In the BOP, prison grievances involve a four-step process, which generally requires an inmate to file within 20 days of the incident both an informal resolution form (BP–8) and a formal

Berk's *Complaint* establishes on its face that he failed to complete the administrative-remedy process before he filed it. *See* Doc. 3 at 17 (reflecting *Complaint* was signed on May 11, the day after the last event at issue occurred); *Carbe*, 492 F.3d 325, 328. Berk admits as much and suggests the unavailability of administrative remedies. Doc. 3 at 16 ("The intimations of Dr. Douglas and Mr. Martin on 5/3/2019 reinforced related threats and warnings such that administrative remedy procedures are unavailable to me, lest I draw further punishment or ancillary retaliation for repeating behavior so vehemently repressed."). However, when asked to explain why his administrative remedies were unavailable, Berk only asserts:

> Deft. Douglas expressly warned me that further action on behalf of my legal claims would result in my removal from RDAP (including benefits and incentives) and implied that further disciplinary action would also follow (which events has [sic] since borne out).

Doc. 10 at 2; *see also* Doc. 17 at 2 (reiterating the same).

In *Ross v. Blake*, ––– U.S. –––, 136 S. Ct. 1850, 1859-60 (2016), the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief" and therefore not "available": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Only the third circumstance is conceivably applicable here.

---

Administrative Remedy Request (BP–9) to begin the process. *Shelton v. Leon*, 648 F. App'x 491, 492 (5th Cir. 2016) (per curiam).

4

While the United States Court of Appeals for the Fifth Circuit has yet to address the issue, other circuit courts have held that serious threats of substantial retaliation against an inmate render the administrative remedy "unavailable." *Rinaldi v. United States*, 904 F.3d 257, 268-69 (3d Cir. 2018) (collecting cases from the Ninth, Tenth, and Eleventh Circuits). Moreover, to prove that administrative remedies are unavailable, a prisoner must make both a subjective and an objective showing, to-wit: "(1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269. Conclusory and unsupported assertions do not suffice. *Williams v. Barrow*, 559 F. App'x 979, 987–88 (11th Cir. 2014) (finding inmate's conclusory allegation that "escalating retaliation" prevented him from exhausting his grievance remedies insufficient to avoid dismissal for lack of exhaustion).

Here, even accepting Berk's conclusory allegations as true, he has not asserted that Douglas and Martin made any serious, actual threat of substantial retaliation. Instead, Berk complains only of Douglas' and Martin's insinuations and intimidation tactics, such as (1) "grilling" him about his sex-offender status and bunkmate problem, (2) making a scene in the housing unit, and (3) informally disciplining him for not following the rules—essentially bypassing Douglas and Martin and seeking redress directly from Easton, a superior, and not any threats. In other words, Berk relies only on his subjective fears of losing privileges—i.e., being removed from RDAP—or facing unspecified discipline, rather than any objectively serious and substantial threat conveyed by Douglas or Martin. *See Ryan v. Phillips*, 558 F. App'x 477, 478 (5th Cir. 2014) (per curiam) (refusing to excuse exhaustion requirement where inmate was only "fearful that he would be retaliated against if he pursued his grievances"); *Fanary v. Franklin*,

No. 12-CV-924, 2016 WL 552624, at *5 (M.D. Ala. Jan. 20, 2016), *R. & R. adopted by* 2016 WL 589692 (M.D. Ala. Feb. 11, 2016) (declining to excuse exhaustion where inmate "proffer[ed] only conclusory and unsupported allegations of a general fear for his safety or of retaliation"); *Hurd v. Durrand*, No. 12-20899, 2013 WL 1192351, at *11 (S.D. Fla. Jan. 24, 2013), *R. & R.. adopted sub nom. by Hurd v. Durant*, 2013 WL 1192342 (S.D. Fla. Mar. 22, 2013) ("An expression of general fear on the part of an inmate/plaintiff …, that defendants might retaliate if he used a grievance procedure to complain, is not enough to make the grievance procedure unavailable, and avoid dismissal for lack of exhaustion."); *Howard v. Felton*, No. 5:08-CV-201, 2009 WL 331386, at *1 (M.D. Ga. Feb. 6, 2009) (dismissing for lack of exhaustion because inmate "merely ma[de] conclusory and unsupported statements that he feared, for whatever reason, retaliation if he filed an appeal of his prison grievance and that he was 'advised' by someone not to pursue the grievance procedure").

Neither has Berk demonstrated that he was actually thwarted from pursuing administrative remedies due to the actions of Douglas and Martin. *Rinaldi*, 904 F.3d at 268 (an inmate must show both that the threat was objectively serious enough and that it "actually did deter him" (quoting *Turner v. Burnside*, 541 F.3d 1077, 1084-86 (11th Cir. 2008)); *Jackson v. Carter*, No. 19-2010, ___ F. App'x ___, 2020 WL 2494408, at *2 (3d Cir. May 14, 2020) (per curiam) (affirming dismissal for lack of exhaustion despite numerous allegations of threats and retaliation from corrections officers because inmate failed to demonstrate that the officers' behavior "actually did deter" him from filing or pursuing a grievance); *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (generalized allegations of threats were insufficient and the inmate did "not contend that the threats from guards prevented him from filing a grievance or otherwise

rendered [the] grievance procedures unavailable"). Indeed, Berk only offered such occurrences as excuses for his failure to exhaust after the Court inquired about the same and does not allege that they prevented him from filing the administrative grievance process. Indeed, Douglas and Martin's purported warning that "further action on behalf of "Berk's" legal claims would have negative consequences, Doc. 10 at 2, did not deter Berk from pursuing his so-called "legal claims," to-wit: filing this lawsuit.

On this record, Berk has not shown that the requisite administrative remedies were made "unavailable" to him due to serious threats of retaliation. Because Berk failed to exhaust his available administrative remedy before filing this action, he has failed to state a cognizable claim and this case should be dismissed. *See Hicks v. Garcia*, 372 F. App'x 557, 558 (5th Cir. 2010) (per curiam) (affirming *sua sponte* dismissal for failure to state a claim where the plaintiff had adequate notice that his claims where subject to dismissal for failure to exhaust administrative remedies).

### III.  CONCLUSION

For the foregoing reasons, this action should be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim because he did not exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a).

**SO RECOMMENDED** on June 24, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).